UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
MILTON HOLLOWAY,                 )
                                 )
          Plaintiff,             )
                                 )
          v.                     )    Civil Action No. 09-512 (RWR)
                                 )
DISTRICT OF COLUMBIA             )
GOVERNMENT,                      )
                                 )
          Defendant.             )
_____ )
```

MEMORANDUM OPINION AND ORDER

Plaintiff Milton Holloway brings this action against his
former employer, the District of Columbia, alleging violations of
his rights under the Family and Medical Leave Act ("FMLA"), and
his Fifth Amendment right to due process, arising out of the
termination of his employment as a sanitation worker.  The
District of Columbia has moved for summary judgment.  Because the
District has shown that it is entitled to judgment as a matter of
law on Holloway's due process claim, but Holloway has shown that
there is a genuine issue of material fact precluding judgment for
the defendant on part of his FMLA claim, the motion for summary
judgment will be granted in part and denied in part.

BACKGROUND

From 1997 through September 2006, Holloway was employed by
D.C.'s Department of Solid Waste Collection ("Department") as a
sanitation worker.  Am. Compl. ¶ 5.  Between June 1999 and

October 2005, Holloway was reprimanded on four separate occasions
for failing to maintain regular attendance at work.  Def.'s Mem.
in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 3-4; id., Ex. 3.
In January 2006, the Department suspended Holloway without pay
from February 21, 2006 through March 1, 2006, for "failure to
maintain regular attendance."  Def.'s Mem. at 4; id., Ex. 5.

On March 13, 2006, Holloway was notified of a proposal to
terminate his employment for being absent without leave for ten
consecutive days, and for accruing 352 hours of unauthorized
absence between May 2005 and February 2006.  Am. Compl. ¶ 7;
Def.'s Mem. at 4; id., Ex. 7 at 1.  Holloway and Angela Pringle,
his Union representative, sought rescission of the proposed
letter of removal.  A hearing officer, Lloyd Carter, held a
hearing in May 2006 to decide Holloway's request to rescind the
letter of removal.  Am. Compl. ¶ 7; Def.'s Mem., Ex. 9.  In
June 2006, Carter issued a report and recommendation denying the
request to rescind the letter of termination because the
Department showed by a preponderance of the evidence that
Holloway was absent on the charged dates, but also recommending
that the Department suspend Holloway without pay for 45 days
instead of terminating his employment because Holloway was
enrolled in an employee assistance program and was being
monitored by the Union.  Def.'s Mem. at 5; id., Ex. 9.  Shortly
thereafter, in July 2006, Holloway entered the Salvation Army

Adult Rehabilitation Center substance abuse program.  The
District alleges that Holloway did not inform his supervisor
about how long he would be in the program, nor did he formally
request leave to attend the program.  However, Holloway argues
that in March 2006, he and Pringle asked Holloway's supervisor,
Cassandra Boyd, to grant him leave to enter a substance abuse
treatment program, but Boyd failed to respond.  Holloway further
states that after he entered the Salvation Army program, he
notified his union representative, who informed Holloway's
supervisor, that he had enrolled in a long term substance abuse
program and that Holloway would need to use FMLA leave.  Am.
Compl. ¶¶ 6, 9; Pl.'s Opp'n at 5; id., Ex. A ("Holloway Decl.")
at ¶¶ 6-7, Ex. B ("Pringle Decl.") at ¶¶ 4, 6; see also Def.'s
Mem., Ex. 6 ("Holloway Dep.") at 26:5-22, 27: 1-17.

     On August 3, 2006, a deciding official rejected Carter's
recommendation without explanation, and Holloway's employment was
terminated on August 11, 2006.  Am. Compl. ¶ 8; Def.'s Mem.,
Ex. 11.  Holloway did not learn about the termination of his
employment until May 2007, when he left the Salvation Army's
Adult Rehabilitation Center.  Am. Compl. ¶ 9; Def's Mem. at 6.
Holloway filed his amended complaint in this matter against the
District of Columbia containing two counts: violating Holloway's
rights under the FMLA, 29 U.S.C. 2601 et. seq., by preventing him
from taking 12 weeks of leave and by retaliating against him for

requesting leave (Count I); and violating Holloway's Fifth Amendment right to due process by terminating his employment, and thus infringing his constitutionally protected interest, without providing Holloway notice or an opportunity to challenge the termination (Count II).  Am. Compl. ¶¶ 10-19.

The District of Columbia moves for summary judgment on both counts, arguing that Holloway has not shown that the District interfered with his FMLA rights or retaliated against him for exercising FMLA rights, and that it did not violate Holloway's right to due process because Holloway was given notice and a pre-termination opportunity to challenge his dismissal.  Def.'s Mem. at 12-22.  Holloway opposes.

## DISCUSSION

"'Summary judgment may be appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.'"  Modis v. Infotran, 893 F. Supp. 2d 237, 240 (D.D.C. 2012) (quoting Pueschel v. Nat'l Air Traffic Controllers Ass'n, 772 F. Supp. 2d 181, 183 (D.D.C. 2011) (internal quotation omitted)).  "'In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant.'"  Modis, 893 F. Supp. 2d at 240 (quoting Pueschel, 772 F. Supp. 2d at 183 (quoting Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d

181, 189 (D.D.C. 2008) (quoting <u>Anderson v. Liberty Lobby</u>, 477
U.S. 242, 255 (1986)))); <u>Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.</u>, 475 U.S. 574, 587 (1986)).  However, a non-moving
party cannot defeat summary judgment by "'simply show[ing] that
there is some metaphysical doubt as to the material facts.'"
<u>Peterson v. Archstone</u>, 925 F. Supp. 2d 78, 84 (D.D.C. 2013)
(quoting <u>Matsushita</u>, 475 U.S. at 586).  The important question is
"'whether there is a need for a trial — whether, in other words,
there are any genuine factual issues that properly can be
resolved only by a finder of fact because they may reasonably be
resolved in favor of either party.'"  <u>Morris v. Jackson</u>, Civil
Action No. 07-491 (RWR), 2013 WL 5943519, at * 3 (D.D.C.
October 30, 2013) (quoting <u>Anderson</u>, 477 U.S. at 250).  "A
genuine issue is present in a case where the 'evidence is such
that a reasonable jury could return a verdict for the non-moving
party,' a situation separate and distinct from a case where the
evidence is 'so one-sided that one party must prevail as a matter
of law.'"  <u>Morris</u>, 2013 WL 5943519, at * 3 (quoting <u>Anderson</u>, 477
U.S. at 248, 252).

I.   FMLA

    The FMLA "provides that an 'eligible employee' may be
entitled to twelve weeks of unpaid leave during any twelve-month
period if a 'serious health condition' prevents him from
performing his job functions."  <u>Hopkins v. Grant Thornton Int'l</u>,

851 F. Supp. 2d 146, 151-152 (D.D.C. 2012) (quoting 29 U.S.C.
§§ 2612(a)(1)(D)). An eligible employee (1) has been employed by
the employer from whom leave is requested for at least twelve
months, and (2) has worked a minimum of 1250 hours in the
previous twelve-month period.[1] See 29 U.S.C. §§ 2611(2)(A).
Serious health conditions that justify FMLA leave include an
illness, injury, impairment, or physical or mental condition that
involves either inpatient care, 29 C.F.R. §§ 825.114(a)(1), or
continuing treatment under the supervision of a health care
provider where the employee is incapacitated for over three
consecutive days. 29 C.F.R. §§ 825.114(a)(2)(i). When "these
prerequisites are met, substance abuse qualifies as a serious
health condition." Roseboro v. Billington, 606 F. Supp. 2d 104,
106 (D.D.C. 2009) (citing 29 C.F.R. §§ 825.114(d)).

An employer may be held liable for violating the FMLA under
two distinct claims: (1) interference, if the employer
restrained, denied, or interfered with the employee's FMLA
rights, and (2) retaliation, if the employer took adverse action
against the employee because the employee took leave or otherwise

---

[1] Holloway's amended complaint states that in the year
before his termination, he worked more than 1250 hours. Am.
Compl. ¶ 5. The District "does not concede" that Holloway was
employed the necessary number of hours in the previous year to
qualify as a covered employee under the FMLA, but the District
has not produced evidence, such as its employment record of the
actual number of hours that Holloway worked, to show that there
is no factual dispute regarding the issue.

engaged in activity protected by the Act.  Deloatch v. Harris
Teeter, 797 F. Supp. 2d 48, 64 (D.D.C. 2011); see also Price v.
Washington Hosp. Ctr., 321 F. Supp. 2d 38, 45-46 (D.D.C. 2004).

A.  Interference

The elements of a claim of interference under the FMLA are:
(1) the "plaintiff is an '[e]ligible employee'; (2) the defendant
is an '[e]mployer'; (3) the plaintiff was entitled to take leave;
(4) the plaintiff provided the defendant notice of his or her
intention to take leave; . . . (5) the defendant interfered with
the plaintiff's right to take leave," and (6) the interference
prejudiced the plaintiff.  Haile-Iyanu v. Cent. Parking Sys. of
Va., Inc., Civil Action No. 06-2171 (EGS), 2007 WL 1954325, at *6
(D.D.C. July 5, 2007) (citing Cavin v. Honda of Am. Mfg., Inc.,
346 F.3d 713, 719 (6th Cir. 2003)); McFadden v. Ballard, Spahr,
Andrews & Ingersoll, LLP, 611 F.3d 1, 7 (D.C. Cir. 2010).

The District's lone argument regarding Holloway's
interference claim challenges Holloway's showing under the fourth
element.  The District argues that it did not interfere with
Holloway's FMLA rights because Holloway did not inform the
Department that he would need to take leave to enter the
Salvation Army program before he entered the program.  Def.'s
Mem. at 10-11.  Whenever possible, an employee must give his
employer sufficient notice of his intention to use FMLA leave.
29 C.F.R. § 825.302(a).  The employee may provide notice

verbally, and the notice "need not expressly assert rights under the FMLA . . . ." 29 C.F.R. § 825.302(c). Although under the version of 29 C.F.R. § 825.302(d) that was in effect in 2006, an employer was allowed to require employees to comply "with the employer's usual and customary notice and procedural requirements for requesting leave[,]" the regulation also stated that "failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." 29 C.F.R. § 825.302(d) (2008). Under the regulations in effect in 2006, if an employee did not give reasonable notice, the employer was allowed to choose between two courses of action: it could waive the notice requirements or it could delay the employee's leave. 29 C.F.R. § 825.304(a),(b)(2008).

Here, Holloway alleges that he and Pringle asked Boyd in March 2006 to grant him leave to enter a substance abuse treatment program, and that Pringle later informed Boyd that Holloway had enrolled in a long term substance abuse program and would need to use FMLA leave. Am. Compl. ¶¶ 6, 9; Def.'s Mem. at 5; Holloway Decl. at ¶¶ 6-7; Pringle Decl. ¶¶ 4, 6. While the District cites portions of Holloway's deposition where Holloway acknowledged that he did not follow the normal procedures for requesting FMLA leave, see Def.'s Mem. at 10-11, the same deposition transcript shows that Holloway notified Boyd that he

"was going to into [the] Salvation Army, and [requested] leave
. . . to get drug - - and get drug treatment." Holloway Dep.
26:8-15. Holloway also stated in his deposition that at the time
he entered the Salvation Army program, he was unaware that it
would last for nine months. Id. 26:16-21. The District has
provided no authority for its position that the notice
purportedly provided by Holloway and Pringle was insufficient to
put the District on notice of Holloway's need for FMLA leave.
Because a reasonable finder of fact could accept Holloway's
assertion that he provided his supervisor with notice of his
desire to take FMLA leave, the District's motion will be denied
with respect to Holloway's claim that the District interfered
with Holloway's FMLA rights.

    B.  Retaliation

    To analyze claims of retaliation in violation of FMLA,
"courts apply the burden-shifting framework adopted in McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973)." Roseboro, 606 F.
Supp. 2d at 109 (citing Winder v. Erste, 511 F. Supp. 2d 160, 184
(D.D.C. 2007)). Under that framework, "an employee may establish
a prima facie case creating a presumption of retaliation by
showing (1) that he exercised rights afforded by the FMLA, (2)
that he suffered an adverse employment action, and (3) that there
was a causal connection between the exercise of his rights and
the adverse employment action." Roseboro, 606 F. Supp. 2d at 109

(internal quotation omitted).  "A materially adverse action is one that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Cole v. Powell, 605 F. Supp. 2d 20, 26 (D.D.C. 2009) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1213 (D.C. Cir. 2006))).  "An employee can establish a causal connection by showing that 'the protected activity and the adverse action were not *wholly unrelated*.'"  Roseboro, 606 F. Supp. 2d at 109 (quoting Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (emphasis in original).  One method a plaintiff may use to establish a causal connection is to demonstrate temporal proximity.  Id.

If an employee establishes a prima facie case of retaliation, the employer must produce evidence of a legitimate, non-discriminatory reason for its action.  If the employer does so, the employee is obligated to produce evidence that the employer's purported legitimate reason was pretextual, and that "the real reason for the adverse action was retaliation."  Roseboro, 606 F. Supp. 2d at 109-110 (citing Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007) and Chaffin v. John H. Carter Co., 179 F.3d 316, 320 (5th Cir. 1999)).  "The employee must demonstrate that retaliation was not just 'a mere factor among many,' but the 'determinative factor' or 'real' and 'true reason' behind the adverse action."

Roseboro, 609 F. Supp. 2d at 110 (quoting Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 10 (1st Cir. 1998)).  When determining whether an employer's proffered legitimate, non-discriminatory reason was pretext,

> [a] court looks to whether a reasonable jury could infer intentional discrimination from all of the evidence including: 1) the plaintiff's prima facie case, 2) evidence presented to attack the employer's proffered explanation for its actions, and 3) further evidence of discrimination such as evidence of discriminatory statements or attitudes by the employer. Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004).  A plaintiff can show in a number of ways that the employer's proffered explanation for its actions is a pretext, including by "produc[ing] evidence suggesting that the employer treated other employees . . . more favorably in the same factual circumstances" or "demonstrat[ing] that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision." Brady [v. Office of Sergeant at Arms, 520 F.3d 490, 495 (D.C. Cir. 2008)].  A plaintiff can also discredit the employer's reason by "pointing to[] changes and inconsistencies in the stated reasons for the adverse action; the employer's failure to follow established procedures or criteria; . . . or discriminatory statements by the decisionmaker." Id. at 495 n.3. However, to show pretext, a plaintiff "'must show both that the reason was false, and that discrimination . . . was the real reason.'"  Weber v. Battista, 494 F.3d 179, 186 (D.C. Cir. 2007) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Houston v. SecTek, Inc., 680 F. Supp. 2d 215, 221 (D.D.C. 2010).

The District first argues that Holloway did not exercise rights afforded by the FMLA because he failed to inform the Department that he would need to take leave to enter the program before he entered the program.  Def.'s Mem. at 12-13.  As is mentioned above, Holloway has presented enough evidence for a

reasonable fact finder to determine that he provided sufficient notice to the District of his desire to take FMLA leave to attend the Salvation Army program, and thus has established a prima facie case.

The District next argues that even if Holloway had requested leave for the Salvation Army substance abuse program, Holloway failed to show any causal connection between that request and the termination of his employment because the termination of his employment was premised on absences that occurred at least four months before he entered the program. Def.'s Mem. at 13-14; Def's Reply at 4-5. Holloway disagrees, and argues that he did establish a causal connection between his request for FMLA leave to enter the Salvation Army program and the termination of his employment. Pl.'s Opp'n at 11. There is sufficient temporal proximity between Holloway's purported attempt to use FMLA leave to enter the Salvation Army rehabilitation program in July 2006, and the termination of his employment on August 11, 2006, to permit an inference of a causal connection between the two. "The general rule is that close temporal proximity between an employee's protected activity and an employer's adverse action is sufficient . . . to create genuine issue of material fact as to causal connection." Breeden v. Novartis Pharms. Corp., 684 F. Supp. 2d 58, 62 (D.D.C. 2010) (finding a sufficient temporal proximity to establish a causal nexus where the plaintiff's FMLA

leave began in March 2005, and her sales territory was changed in July 2005); see also Miles v. University of the Dist. of Columbia, Civil Action No. 12-378 (RBW), 2013 WL 5817657, at * 12 (D.D.C. October 30, 2013) (finding a sufficient temporal proximity to establish a causal nexus where the plaintiff's FMLA leave began in April 2011, and her employment was terminated in June 2011).

The District next argues that it had a legitimate, non-discriminatory reason for terminating Holloway's employment - - his "history of unexcused absences from work." Def.'s Mem. at 15. Holloway disagrees, and argues that the District's reason was pretext because there were inconsistencies in the amount of AWOL with which Holloway was charged. Pl.'s Opp'n at 11. However, Holloway does not submit any evidence that employees with similar absence records who did not seek FMLA leave were treated differently. He does not provide any evidence of discriminatory statements directed at him or at people seeking FMLA leave in general. He does not point to any examples of the defendant violating its procedure. Despite the purported discrepancies in the amount of time the District believed Holloway had been absent without leave, the rationale behind the termination of his employment remained constant - - he missed too much work. While Holloway has demonstrated temporal proximity between his purported FMLA request and the termination of his

employment, a plaintiff "cannot reply on temporal proximity alone
to establish pretext; he must point to additional evidence."
Butler v. Dist. of Columbia Hous. Fin. Agency, 593 F. Supp. 2d
61, 67 n.13 (D.D.C. 2009) (stating that "[a]lthough close
temporal proximity between [the plaintiff's] leave (and leave
request) and his termination alone may be sufficient for a
reasonable jury to infer causation, once [the defendant]
proffered a legitimate non-Acts-violating reason for his
termination, as it did, [the plaintiff] cannot rely on temporal
proximity alone to establish pretext; he must point to additional
evidence") (citing Winder v. Erste, 511 F. Supp. 2d 160, 185
(D.D.C. 2007)).  Here, Holloway falls short.  Therefore, Holloway
may proceed with his FMLA claim on a theory of interference, but
may not proceed with that claim on the theory of retaliation.

II.  DUE PROCESS

    Holloway's amended complaint alleges that the termination of
his employment violated his right to procedural due process
because "defendant failed to provide [Holloway] notice of the
termination, due process and a means to challenge his
termination."  Am. Compl. ¶ 17.  "The Fifth Amendment of the
Constitution prohibits the deprivation of property without the
due process of law."  Matthews v. Dist. of Columbia, 675 F. Supp.
2d 180, 185 (D.D.C. 2009) (citing U.S. Const. amend. V).

        "Procedural due process imposes constraints on
        governmental decisions which deprive individuals of

> 'liberty' or 'property' interests within the meaning of
> the Due Process Clause of the Fifth or Fourteenth
> Amendment." <u>McManus [v. Dist. of Columbia]</u>, 530 F.
> Supp. 2d [46], 72 [(D.D.C. 2007)] (quoting <u>Mathews v.
> Eldridge</u>, 424 U.S. 319, 323 (1976)). "Procedural due
> process requires sufficient notice and 'opportunity to
> be heard at a meaningful time and in a meaningful
> manner.'" <u>Elkins v. Dist. of Columbia</u>, 527 F. Supp. 2d
> 36, 48 (D.D.C. 2007) (quoting <u>UDC Chairs Chapter, Am.
> Ass'n of Univ. Professors v. Bd. of Trustees of the
> Univ. of the Dist. of Columbia</u>, 56 F.3d 1469, 1472
> (D.C. Cir. 1995)).

<u>Matthews</u>, 675 F. Supp. 2d at 185. "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" <u>Int'l Union v. Clark</u>, 706 F. Supp. 2d 59, 68 (D.D.C. 2010) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)).

> Courts consider three factors in deciding whether due
> process has been provided: "[f]irst, the private
> interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such
> interest through the procedures used, and the probable
> value, if any, of additional or substitute procedural
> safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and
> administrative burdens that the additional or
> substitute procedural requirement would entail."

<u>Int'l Union</u>, 706 F. Supp. 2d at 68 (quoting <u>Mathews</u>, 424 U.S. at 335).

Assuming that Holloway had a property interest in his employment, an issue essentially unaddressed by the parties, the question is whether Holloway received adequate process before his employment was terminated. <u>See Tabb v. Dist. of Columbia</u>, 605 F. Supp. 2d 89, 97 (D.D.C. 2009). Here, Holloway received a letter

informing him of the proposal to terminate his employment and the basis for that proposal, and a formal hearing before a neutral (Carter) where Holloway was allowed to both present evidence and to bring a union representative on his behalf.  Holloway does not provide any authority showing that the level of process he received is insufficient.  He does not dispute that he received pre-termination notice and a hearing, and he does not contest the strong interest that the District of Columbia has in employing reliable workers.  See Pl.'s Opp'n at 14; O'Donnell v. Barry, 148 F.3d 1126, 1133 (D.C. Cir. 1998).  Holloway argues that his removal was similar to the plaintiff's removal described in the opinion in Thompson v. Dist. of Columbia, 530 F.3d 914 (D.C. Cir. 2008).  However, in Thompson, the District did not provide the plaintiff any process at all and did not "contend it afforded him sufficient process."  Thompson, 530 F.3d at 920.  Instead, the District transferred the plaintiff to a position that was going to be eliminated as part of a reduction in force, without providing notice of the transfer, or a process to challenge it. Id.  Thus, that case provides no support for Holloway's position. Further, while Holloway complains that he received the notice that Carter's recommendation would be rejected too late to administratively challenge it, the letter informed him of his right to appeal his removal "through the negotiated grievance procedure of AFSCME Local 2091," which allowed him ten days after

learning of the termination to file a grievance.  Def.'s Mem.,
Ex. 1; id., Ex. 11.  Holloway does not dispute that he did not
file a grievance in accordance with that procedure.  "Plaintiffs
cannot plausibly claim to have been deprived of due process,
particularly where they have failed to fully take advantage of
the process afforded to them by [a] CBA's grievance procedures."
AFGE, Local 2741 v. Dist. of Columbia, 689 F. Supp. 2d 30, 35
(D.D.C. 2009) (citing Yates v. Dist. of Columbia, 324 F.3d 724,
726 (D.C. Cir. 2003)).

CONCLUSION AND ORDER

Holloway has demonstrated the presence of a disputed issue
of material fact that, if resolved in Holloway's favor, could
support his claim that the District of Columbia interfered with
his FMLA rights.  However, the District has shown that it is
entitled to judgment as a matter of law on Holloway's retaliation
and due process claims.  Therefore, it is hereby

ORDERED that the District of Columbia's motion [17] for
summary judgment be, and hereby is, GRANTED in part and DENIED in
part.  Judgment is entered for the defendant on Holloway's
retaliation and due process claims.  The defendant's motion
regarding the interference claim is denied.  It is further

ORDERED that the parties appear for a scheduling conference
on February 14, 2014 at 9:15 a.m.

SIGNED this 30th day of December, 2013.


_____/s/_____

RICHARD W. ROBERTS
Chief Judge